RECORD NO. 13-2326

---

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT
———————————————

**DIANA LOUISE HOUCK; STEVEN G. TATE**
*Plaintiffs-Appellants,*

v.

**SUBSTITUTE TRUSTEE SERVICES, INC.**
*Defendant-Appellee.*

———————————————————

## BRIEF OF DEFENDANT-APPELLEE
———————————————————

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FROM THE WESTERN DISTRICT OF NORTH CAROLINA AT STATESVILLE

———————————————————◊———————————————————

**Jeffrey A. Bunda, Esq. – N.C. Bar No. 34432**
HUTCHENS LAW FIRM
**6230 Fairview Rd., Suite 315**
**Charlotte, NC 28210**
**(v):   704.362.9255 x 2359**
**(f):   704.362.9301**
**jeff.bunda@hskplaw.com**
*Counsel for Defendant-Appellee Substitute Trustee Services, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Fourth Circuit Local Rule 26.1, Appellee Substitute Trustee Services, Inc., through counsel, makes the following disclousres:

1. STS is not a publicly held corporation or other publicly held entity.

2. STS does not have a parent corporation.

3. Less than ten (10) percent of the stock of STS is owned by a publicly held corporation.

4. No publicly held corporation or other publicly held entity has a direct financial interest in the outcome of the litigation.

5. STS is not a trade association.

6. While technically this case arises from the District Court for the Western District of North Carolina, the allegations involve two separate bankruptcy proceedings; W.D.N.C. 11–51141 and 11–51513.  Plaintiff Steven Tate was the trustee in the second bankruptcy case, from which the primary case arises.


*/s/ Jeffrey A. Bunda*                    Date:<u>March 6, 2014</u>
Jeffrey A. Bunda, Esq.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF THE ISSUES........................................................... 1

STATEMENT OF THE CASE ............................................................. 2

STATEMENT OF THE FACTS ............................................................ 3

SUMMARY OF THE ARGUMENT........................................................... 5

ARGUMENT ........................................................................... 10

STANDARD OF REVIEW ................................................................ 10

DISCUSSION OF THE ISSUES ......................................................... 11

   I.   THE COURT CORRECTLY APPLIED THE <u>TWOMBLY</u> ANALYSIS WHEN
       DISMISSING THE COMPLAINT BECAUSE THE APPELLANTS DO
       NOT PLAUSIBLY ASSERT A CLAIM FOR A VIOLATION OF THE
       AUTOMATIC STAY OR ANY OTHER CLAIMS.............................. 11

      i. STS NEITHER WILLFULLY VIOLATED THE AUTOMATIC STAY NOR
         DAMAGED MS. HOUCK ..............................................
                                               12

         a. STS DID NOT WILLFULLY VIOLATE THE AUTOMATIC STAY…
                                               12

         b. MS. HOUCK SUFFERED NO DAMAGE ................................
                                               15

      ii. MS. HOUCK WAS NOT A "DEBTOR" WHEN SHE FILED THE
          SECOND BANKRUPTCY CASE ........................................
                                             16

   II.  THE TRIAL COURT DID NOT APPLY AN IMPERMISSIBLE
       BALANCING TEST BECAUSE THE COMPLAINT IS NOT PLAUSIBLE
       ON ITS FACE .................................................... 17

   III. THE TRIAL COURT DID NOT MAKE ERRORS IN ITS FINDINGS
       OF FACT BECAUSE APPELLANTS' PROVISION OF NOTICE TO
       CO-DEFENDANTS SHOULD NOT IMPUTE NOTICE TO STS ............... 19

   IV.  THE TRAIL COURT CORRECTLY DISMISSED APPELLANTS' STATE
       LAW CLAIMS BY RELYING ON INDEPENDENT AUTHORITY AND
       RATIONALE....................................................... 20

V.    THE TRIAL COURT CORRECTLY DISMISSED THE COMPLAINT
      WITH PREJUDICE ................................................................    26

CONCLUSION .............................................................................    27

CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a).........................    28

## TABLE OF AUTHORITIES

**CASES**

Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009)
      ........................................................................ 10,12,15,18,19,20

Bob Timberlake Collection v. Edwards, 176 N.C. App. 33, 626
      S.E.2d 315 (2006)...........................................................23

Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955,
      L.Ed. 2d. 929 (2007)..........................1,7,9,10,11,12,17,18,19

Budget Service Co. v. Community Corp., 901 F.2d 325 (3rd Cir.
      1998)........................................................................ 13

Blum v. Bacon, 457 U.S. 123 (1982)...........................................10

CACI Intern., Inc. v. St. Paul Fire and Marine Ins. Co., 566
      F.3d 150, 154 (4th Cir. 2009).............................................14,n.3

Coley v. N.C. Nat'l Bank, 41 N.C. 121, 254 S.E.2d 217 (1979)......24

Choice Hotels Intern., Inc. v. Goodwin and Boone, 11 F.3d 469
      (1993).........................................................................26

Citizens Bank of Md. v. Strumpf, 516 U.S. 16, 116 S.Ct. 286
      (1995).......................................................................15,n.4

Davis Lake Comm. Ass'n, Inc. v. Feldman, 138 N.C. App. 292, 530
      S.E.2d 865 (2000) .........................................................21

DIRECTV, Inc. v. Cephas, 294 F. Supp. 2d 760 (M.D.N.C. 2003)......21

Eastern Shore Markets Inc. v. J.D. Associations, LLP, 213 F.3d
      185 (4th Cir. 2000).........................................................10

E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435 (4th
      Cir. 2011) ...................................................................10

ii

Fox v. Wilson, 85 N.C. App. 292, 354 S.E.2d 737 (1987).....................24

Fletcher v. Fletcher, 123 N.C. App. 744, 474 S.E.2d 802 (1996)
    disc. rev. denied, 345 N.C. 640, 483 S.E 2d 706 (1997).........23

Gants v. NCNN Nat'l. Bank of North Carolina, 94 N.C. App. 198,
    379 S.E.2d 865 (1999)..................................................24

Harrison v. Westinghouse Savannah River Co., 176 F.3d 776 (4th
    Cir. 1999).............................................................23

In re Arena, 81 B.R. 851 (E.D. Pa. 1988)..............................17

In re Hamrick, 175 B.R. 890 .............................................11

In re Peterson, 295 B.R. 467 (W.D.N.C. 2003)...................11,13,16

In re Smith, 217 B.R. 567 (E.D. Ark. 1998)......................... 13,15

Johnson v. Ruark Obstetrics, 327 N.C. 283, 395 S.E.2d 85
    (1990)................................................................25

Piriano Bros., LLC v. Atlantic Fin. Group. Inc., 211 N.C. App
    343, 712 S.E.2d 328 (2011).........................................24

Rosenthal v. Perkins, 42 N.C. App. 449, 257 S.E.2d 63 (1979)......23

Smith v. Cent. Soya of Athens, 604 F.518 (E.D.N.C. 1985).........23

Watson v. Dixon, 130 N.C. App. 47, 502 S.E.2d 15 (1998)...............25

**STATUTES**

11 U.S.C. § 109............................................................17

11 U.S.C. § 342.................................................... 11,12,13,15

11 U.S.C. § 349............................................................16

11 U.S.C. § 362............................................................. 5

N.C. Gen. Stat. § 45-21.16.............................................22,n.5

N.C. Gen. Stat. § 45-21.17 ............................................ 22

N.C. Gen. Stat. § 45-21.17A ........................................... 22

iii

N.C. Gen. Stat. § 45-21.27 ............................................................................ 16

N.C. Gen. Stat. § 75-50 ............................................................................... 21

N.C. Gen. Stat. § 75-55 ............................................................................... 21

**RULES AND REGULATIONS**

Fed. R. Bankr. P. 1007 ................................................................................ 13

Fed. R. Bankr. P. 2002 ................................................................................ 13

Fed. R. Civ. P. 9(b) ................................................................................... 23

Fed. R. Civ. P. 12(b)(6) .............................................................................. 10

## JURISDICTIONAL STATEMENT

STS generally agrees with the jurisdictional statement proffered by the Appellants in their Opening Brief. (Doc. 15, p. 7.) In fact, this appeal may no longer be interlocutory because the entire case has been dismissed as to the remaining co-Defendants by order dated February 20, 2014. (See W.D.N.C. 5:13-cv-00066-DSC, Doc. 71.)

## STATEMENT OF THE ISSUES

1. Whether the Trial Court misapplied the Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S. Ct. 1955, 167 L.Ed. 2d. 929 (2007) analysis by dismissing the Complaint as to STS pursuant to Fed. R. Civ. P. 12(b)(6) when the Appellants fail to plausibly assert a claim for a violation of the automatic stay, or any other claims?

2. Whether the Trial Court applied an impermissible "balancing test" to the Twombly analysis when the Complaint as pled is not plausible?

3. Whether the Trial Court erred in its finding of fact because Appellants allege their provision of notice of the bankruptcy filing to parties other than STS should be imputed to STS?

4. Whether the Trial Court erred in dismissing the remainder of the Appellant's state law claims despite the Trial

1

Court's adoption of independent rationale and authority for their dismissal?

5. Whether the Trial Court erred in dismissing the case with prejudice, instead of without prejudice, when the Trial Court evaluated the claims on the merits and did not dismiss with prejudice as a procedural sanction?

## STATEMENT OF THE CASE

Ms. Houck filed her Complaint on April 26, 2013 against STS and its co-Defendants for a violation of the automatic stay and various state law claims arising from her failed attempt to modify her home mortgage and the resulting foreclosure sale. (JA 1–30.)  Ms. Houck later amended the Complaint to add Mr. Tate as a co-Plaintiff.  (Id. at 11.)  STS moved to dismiss the First Amended Complaint for the failure to state a claim upon which relief can be granted.  (Id. at 1–7.)

Appellants filed two separate responses to STS' motion to dismiss and moved the Court for leave to file a Second Amended Complaint (the "Second Amended Complaint" or "Complaint") to address the deficiencies in the Complaint prompting STS' first motion to dismiss.  (Id.)  The Trial Court granted Appellants' motion to amend and on August 28, 2013, Appellants filed their Second Amended Complaint.  (Id. at 10–30.)  STS again moved to dismiss the Second Amended Complaint on September 10, 2013. (Id.

2

at 67–101.)  On October 1, 2013, the Honorable David S. Cayer, United States Magistrate Judge, dismissed the Second Amended Complaint with prejudice.  (Id. at 119–124.)  Ms. Houck and Mr. Tate have appealed the Trial Court's ruling to this Court.

### STATEMENT OF THE FACTS

Plaintiff Diana Louise Houck's ("Ms. Houck") Complaint describes a homeowner who was unable to modify her home mortgage after losing her job and, despite two bankruptcy filings, lost her home to foreclosure. After losing her job, Ms. Houck admits to being in danger of defaulting on her mortgage held by co-Defendant LifeStore Bank, F.S.A. (hereinafter, "co-Defendant LifeStore" or "LifeStore") and made attempts to modify the $123,000.00 loan (the "Loan") encumbering her primary residence located at 318 Todd Railroad Grade Rd., Todd, NC 28684 (the "Real Property") despite not having income of her own.  (JA 13–14.)  Co-Defendant LifeStore referred Ms. Houck to its loss mitigation and mortgage servicing agent, Grid Financial Services, Inc. (hereinafter "co-Defendant Grid" or "Grid"). (Id. at 14.)  Ms. Houck admits to defaulting on her mortgage to accomplish her goal of obtaining a loan modification.  (Id. at 14.)  In the spring of 2011, Grid and/or LifeStore declined to modify the Loan because Ms. Houck was unemployed, despite her demands that they consider the income of her spouse, Ricky Penley ("Mr. Penley") who was not obligated on the promissory

3

note evidencing the Loan, Deed of Trust, or otherwise liable for the Loan's repayment.  (<u>Id</u>. at 13,15, 93-94.)

In July 2011, Substitute Trustee Services, Inc. (the "<u>Appellee</u>" or "<u>STS</u>") by and through its attorneys, Hutchens, Senter, & Britton, P.A., predecessor-in-interest to Hutchens, Senter, Kellam & Pettit, P.A., d/b/a Hutchens Law Firm ("<u>HSKP</u>") initiated quasi-judicial foreclosure proceedings.  (<u>Id</u>. at 15, 52.)  In response, on September 12, 2011, Ms. Houck filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the Western District of North Carolina, case number 11-51141 (the "<u>First Bankruptcy Case</u>").  (<u>Id</u>. at 16.)  Mrs. Houck failed notice STS of the First Bankruptcy Case; in fact, she only listed LifeStore on her creditor matrix and failed to list STS and/or its attorneys, HSKP.  (<u>Id</u>.)  The filing briefly stayed the foreclosure proceedings because on September 30, 2011, the Bankruptcy Court dismissed the First Bankruptcy Case due to Mrs. Houck's failure to file the required schedules and statements.  (<u>Id</u>. at 16-17, 57.)  STS moved to reactivate the proceeding to schedule a new foreclosure sale.  (<u>Id</u>.)

On Friday, December 16, 2011, Ms. Houck again filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Western District of North Carolina, case number 11-51513 (the "<u>Second Bankruptcy Case</u>").  (<u>Id</u>. at 17, 58-63.)  Co-Plaintiff Steven G. Tate ("<u>Mr. Tate</u>" and, collectively with Ms.

4

Houck, the "Appellants") served as trustee in the Second Bankruptcy Case. (Id. at 11.) The Bankruptcy Court immediately filed an Order for Ms. Houck to Appear and Show Cause as to why the Second Bankruptcy Case should not be dismissed because she failed to file required information. (Id. at 64.)

Again, Ms. Houck only listed LifeStore on her creditor matrix and failed to list STS and/or its attorneys, HSKP. (See id. at 17, 63.) Plaintiffs admit Ms. Houck failed to provide formal notice of the Second Bankruptcy Case to STS or HSKP but instead rely on a telephone call from Mr. Penley to an unidentified HSKP employee to notice STS. (See id. at 18, 63.)

On Tuesday, December 20, 2011, LifeStore became the high bidder of the foreclosure sale of the Real Property conducted by STS. (Id. at 65.) The very next day, Wednesday, December 21, 2011, the Second Bankruptcy Case was dismissed. (See Id. at 19.) Ms. Houck admits that she did not resist the dismissal of the Second Bankruptcy Case. (Id.) No upset bids were filed and on January 17, 2012, STS conveyed the Real Property to LifeStore. (Id. at 97.)

SUMMARY OF THE ARGUMENT

Appellants' Second Amended Complaint fails to state a claim upon which relief can be granted against STS for a violation of the automatic stay as provided for in 11 U.S.C. § 362 because STS neither willfully violated the automatic stay nor caused Ms.

5

Houck damage.  Conduct in violation of the automatic stay is 'willful' when the creditor intentionally proceeded with collection efforts despite knowledge of the automatic stay that resulted in damage to the debtor.  A strict liability standard for violations of the automatic stay is not applicable.  Despite being factually impossible, Ms. Houck suggests STS should be liable for a violation of the automatic stay when *she* willfully failed to send notice to STS, include STS and/or HSKP on the creditor matrices filed in connection with either Bankruptcy Case and that notice should be imputed upon STS based on her speculation as to how co-Defendant LifeStore received notice[1]. Since Ms. Houck did not notice STS of her filing of the Second Bankruptcy Case, the Court correctly dismissed this claim.

Ms. Houck also suffered no damage as a result of the foreclosure sale held the day before her Second Bankruptcy Case was dismissed.  The Real Property was sold on December 20, 2011 and the sale confirmed ten days later.  The Second Bankruptcy Case was dismissed *the day after the foreclosure sale* and well within North Carolina's statutory ten-day upset bid period. Effectively, any interest in the Real Property revested as it was immediately before the commencement of the filing of the

---

[1] In fact, Ms. Houck failed to provide actual notice to co-Defendant LifeStore either; instead, it appears from the record that co-Defendant LifeStore was sent notice by first-class mail from the Bankruptcy Noticing Center on Sunday, December 18, 2011.  (JA 78.)

petition.  Ms. Houck willfully allowed the Second Bankruptcy
Case to be dismissed, did not protest the foreclosure sale in
that forum and did not suffer damages from its completion
because she was admittedly in default on her mortgage.

Appellants argue next that somehow the Court erred by
applying a "balancing test" to the Complaint despite the
Appellants failure to raise their allegations beyond naked
assertions and mere speculation.  In dismissing the Appellants'
claims, the Court correctly applied <u>Twombly</u> by recognizing that
the Complaint was not plausible because it offered nothing more
than naked assertions and mere speculation.  It did not create
some "balancing test" that required either STS or the Court to
suggest a more likely, lawful explanation.  Instead, the Court
simply rejected the Appellants' claims by finding that the
allegations did not support a plausible cause of action.

Appellants argue next that the Court made errors in its
findings of fact regarding the creditor matrix Ms. Houck filed
in the Second Bankruptcy Case.  The Court did not make any
errors in its findings of fact regarding the creditor matrix
because the Court found that "[Ms.] Houck failed to file a
matrix, schedule and other information necessary to properly
serve her creditors."  (JA 120.)  The Court correctly found that
Ms. Houck failed to file a matrix sufficient to serve her
creditors because it contained no other creditors than

7

LifeStore.  Ms. Houck expressly omitted STS.  Accordingly, the Court made no errors in its findings of fact.

Appellants next argue that, after determining that Appellants' Complaint fails to state a claim upon which relief can be granted as to STS for a violation of the automatic stay, the Court erred in dismissing the remaining state law claims against STS because Appellants alleged other facts relating to actions taken before the filing of the Second Bankruptcy Case. The Court did not err in dismissing the state law claims because it adopted independent rationale in determining the Complaint failed to state a claim for which relief can be granted.  Again, the Appellants attempt to conflate the allegations relating to the other "Defendants" – co-Defendants Grid and LifeStore – with the actions of STS.  The only role of STS in this case involved the administration of the foreclosure pursuant to the North Carolina law.  STS had nothing to do with Ms. Houck's efforts to obtain a loan modification from LifeStore and/or Grid and certainly did not hatch a conspiracy with its co-Defendants to "trick" Ms. Houck – an unemployed homeowner – into defaulting on the mortgage so STS could foreclose.  Since Appellants' state law claims are wholly implausible on their face, the Court did not err in their dismissal.

Finally, Appellants argue that the case should have been dismissed without prejudice or that the Appellants should have

been allowed to file a *third* amended Complaint.  The Court did not err in dismissing the Complaint without prejudice because the Court correctly determined that the Appellants failed to state a claim for which relief can be granted and did not dismiss for a procedural sanction.  Appellants' factual allegations simply do not support any causes of action that are plausible on their face.  The Court indulged the Appellants by allowing them to amend their Complaint, for the second time, in response to STS' first motion to dismiss.  Appellants still could not convince the Court they were entitled to the relief sought.  Appellants should not be allowed infinite attempts to recast their claims to survive a motion to dismiss. Accordingly, the Court did not err in dismissing the Complaint with prejudice.

In conclusion, the Appellants simply do not state a claim upon which relief can be granted.  STS did not violate the automatic stay because Ms. Houck did not provide notice to STS of the Second Bankruptcy Case and she was not damaged by the foreclosure sale.  The Court correctly applied the Twombly analysis by dismissing the claims for the automatic stay.  The Court made no errors in its findings of fact and had independent authority for the dismissal of the state law claims.  In sum, the Court correctly dismissed the Second Amended Complaint because the alleged claims are not facially plausible.

STS respectfully prays the Court for an order AFFIRMING the Court's order dismissing the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

### STANDARD OF REVIEW

STS generally agrees with the Appellants' statement that this Court reviews the District Court's ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) *de novo*. E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011). After accepting all well-pled facts as true, a Complaint must both (1) allege facts that "raise a right to relief above the speculative level" and (2) allege a cause of action that is plausible on the face of the complaint. Bell Atlantic v. Twombly, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 1964-5, 1974 (2007). Naked assertions "devoid of further factual enhancement" do not suffice. Aschroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937,1949 (2009). The Court is also not required to blindly accept all well-pled allegations as true if such contain "unwarranted, inferences, unreasonable conclusions, or arguments." Eastern Shore Markets Inc. v. J.D. Associations, LLP, 213 F.3d 185, 180 (4th Cir. 2000). Finally, this Court may affirm an order from the trial court for any reason supported by the record, even one not raised or added below. Blum v. Bacon, 457 U.S. 123, 137 n.5 (1982).

10

## DISCUSSION OF THE ISSUES

**I.  THE COURT CORRECTLY APPLIED THE <u>TWOMBLY</u> ANALYSIS WHEN DISMISSING THE COMPLAINT BECAUSE THE APPELLANTS DO NOT PLAUSIBLY ASSERT A CLAIM FOR A VIOLATION OF THE AUTOMATIC STAY OR ANY OTHER CLAIMS.**

The Court correctly dismissed the Complaint for the failure to state a claim upon which relief can be granted because the Appellants do not plausibly assert a claim for a violation of the automatic stay, or any other claims.  To prevail on a claim for sanctions for a violation of an automatic stay a debtor must show "(1) injury to the debtor [and] (2) caused by a 'willful' violation of the stay." <u>In re Peterson</u>, 297 B.R. 467, 470 (W.D.N.C. 2003) (citing <u>In re Hamrick</u>, 175 B.R. 890.  It is undisputed that Ms. Houck filed the Second Bankruptcy Case on December 16, 2011.  Appellants, however, fail to allege that Ms. Houck gave notice of either of her Bankruptcy Cases to STS as required by 11. U.S.C. § 342.  Appellants further fail to show that STS's actions were willful, injured Ms. Houck, or that even Ms. Houck was a "debtor" pursuant to the United States Bankruptcy Code.  The Trial Court correctly applied the <u>Twombly</u> analysis to this claim, and this Court should affirm the order dismissing the Complaint with prejudice. For the reasons discussed *Infra § IV*, the Trial Court correctly applied the <u>Twombly</u> analysis to Ms. Houck's state law claims.

11

### i. __STS Neither Willfully Violated the Automatic Stay Nor Damaged Ms. Houck.__

The Court correctly dismissed Ms. Houck's claim for sanctions for a violation of the automatic stay because STS did not willfully violate the automatic stay.  Ms. Houck fails to allege that she provided notice of her Second Bankruptcy Case to STS as required by the United States Bankruptcy Code.  (JA 17–18, 63.)  Instead, Appellants rely on speculation that STS may have received electronic notification of the Second Bankruptcy Case despite Ms. Houck's failure to mention STS in her matrix. (Id.)  Appellants further suggest that Ms. Houck's inclusion of co-Defendant LifeStore in the creditor matrix should impute notice upon STS without any legal support. (Id. at 17.)  Finally, Ms. Houck was not damaged by the foreclosure sale that took place one day after the dismissal of her Second Bankruptcy Case for again failing to follow the appropriate procedure. (Id. at 19.)  Accordingly, the Court correctly applied the Twombly analysis when it dismissed the Complaint.

### a. __STS did not Willfully Violate the Automatic Stay__.

When a debtor files bankruptcy, "[i]f notice is required to be given by the debtor to a creditor, such notice shall contain the name, address, and last 4 digits of the [social security] number of the debtor."  11 U.S.C. § 342(c)(1).  The debtor is charged with the duty to provide notice of the bankruptcy case

to the creditor[2].  See 11 U.S.C. § 342(a).  Presumably, should the debtor fail to provide the required notice, the "notices shall be mailed [by the clerk] to the address shown on the list of creditors."  Fed. R. Bankr. P. 2002(g)(2).  The debtor is charged with the duty to provide the Bankruptcy Court "a list of all creditors with proper addresses."  See Fed. R. Bankr. P. 1007(a)(1); see also In re Smith, 217 B.R. 567, 568 (E.D. Ark. 1998).  In essence, when a debtor fails to fulfill her duty to notice a creditor, the Bankruptcy Code offers a failsafe to ensure creditors get the required notice.

Regardless, "A creditor's conduct in violating the automatic stay is 'willful' when: '[the creditor] knew of the pending petition and intentionally attempted to [continue collection efforts] in spite of it.'"  In re Peterson, 297 B.R. at 470 (W.D.N.C. 2003) (quoting Budget Service Co. v. Community Corp., 901 F. 2d 325, 328 (3rd Cir. 1980).  Even if a technical violation of the automatic stay may have occurred a "'strict liability' approach is not applicable."  In re Peterson, 297 B.R. at 470; see also Budget Service, 804 F.2d at 292–93.

Here, Ms. Houck fails to allege that she sent STS notice of her Second Bankruptcy case and even admits that she failed to include STS in her creditor matrix.  (JA 18, 63.)  In fact, the

---

[2] Appellee is not a creditor of Ms. Houck.  Instead, Appellee acted as the neutral substitute trustee in the foreclosure proceeding brought by co-Defendant LifeStore after Ms. Houck defaulted in the repayment of her home loan.  (See JA 19.)

13

Second Bankruptcy docket[3] reveals Ms. Houck failed to provide notice of the Second Bankruptcy Case to any creditor, but did list co-Defendant LifeStore. (Id. at 78.) The record reflects that the only notice of the Second Bankruptcy Case was sent first-class mail by the Bankruptcy Noticing Center to co-Defendant LifeStore on Sunday, December 18, 2011 – less than forty-eight (48) hours before the foreclosure sale. (JA 78.) It is not only factually impossible, let alone plausible, for STS to have received notice of the Second Bankruptcy Case when Ms. Houck herself failed to include STS in the creditor matrix and failed to provide STS notice as required by the United States Bankruptcy Code. The Court therefore did not err in dismissing the Appellants' claim for violation of the stay.

Instead, Ms. Houck contends STS received notice based on (1) her naked assertion and speculation that STS may somehow have received electronic notice despite her failure to include STS; (2) notice sent to co-Defendant LifeStore should be imputed on STS; and (3) a telephone call from her husband, Mr. Penley, to HSKP – STS' lawyers – regarding the filing of the Bankruptcy Case should place STS under sanction. First, Ms. Houck cited no legal authority for any of these propositions. Instead, she

_____
[3] In ruling on a motion to dismiss, the Court may consider documents outside of a plaintiff's complaint when the complaint explicitly relies upon then. See CACI Intern., Inc. v. St. Paul Fire and Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009).

14

continues to ask the Court's indulgence for these defects because she filed pro se.

First, Ms. Houck's naked speculation about whether STS received electronic notice is exactly the type of allegation that warrants dismissal under prevailing jurisprudence. Aschroft v. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949. Second, Ms. Houck cites no authority that notice to one creditor should be imputed on all of its agents. Quite the contrary; notice must be independently given. See 11 U.S.C. § 342(a); see also In re Smith, 217 B.R. at 568 (holding that notice to a collection agency was not notice to the underlying creditor). Equally, Mr. Penley's alleged telephone call to an unspecified HSKP employee did not provide notice to STS. Id. Since Plaintiffs fail to allege that STS had notice and committed a willful, intentional act[4], the Trial Court correctly dismissed Ms. Houck's Complaint.

### b.  **Ms. Houck Suffered No Damage**.

The Trial Court correctly dismissed Ms. Houck's Complaint because even if STS committed a willful violation of the

---

[4] Ms. Houck may suggest her speculative allegation that STS "intended to foreclose" on her house is sufficient. Ms. Houck misplaces her reliance on Citizens Bank of Md. V. Strumpf, 516 U.S. 16, 116 S.Ct. 286 (1995) because the United States Supreme Court reversed a lower court's finding that a bank did not violate the stay when it placed a temporary hold on a debtor's account *contemporaneously with filing of its motion for relief and for setoff*. In that case, the creditor not only had actual knowledge of the bankruptcy case, it was a participant in it.

15

automatic stay – which is expressly denied – Ms. Houck suffered
no damage.  To establish sanctions for a violation of the
automatic stay a debtor must also show real injury causing
damage.  In re Peterson, 297 B.R. at 470.  Ms. Houck cannot
establish that she was damaged.  Ms. Houck admits she allowed
the Second Bankruptcy Case to be dismissed "without resistance"
the day after the foreclosure sale.  (JA 19.)  The timing of the
dismissal was well within North Carolina's statutory upset
period, see N.C. Gen. Stat. § 45–21.27, and vested the Real
Property back to Ms. Houck.  See § 11 U.S.C. 349(b)(3)
(dismissal of a petition revests the property as it was prior to
the filing of the petition).  Ms. Houck fails to allege any
damage outside of the foreclosure sale, which would have
occurred regardless of the Second Bankruptcy Case, and which she
willfully allowed to confirm.

Since Appellants fail to allege any facts to show that STS
either willfully violated the stay or that Ms. Houck suffered
damages, the Trial Court properly dismissed the Complaint and
its order should be affirmed.

 ii. **Ms. Houck was not a "Debtor" when she Filed the Second Bankruptcy Case**.

Ms. Houck was also not a "debtor" when she filed the Second
Bankruptcy Case.  "[N]o individual … may be a debtor under this
title who has been a debtor in a case pending under this title

at any time in the proceeding 180 days if the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case." 11 U.S.C. § 109(g)(1). To determine whether conduct was willful, the Court can draw from "adverse inferences from all of the circumstances … including the debtor's failure to prosecute the present case and determination of whether the debtor in conduct manifesting an abuse of the bankruptcy process in making repetitious filings." In re Arena, 81 B.R. 851, 853 (E.D. Pa. 1988).

Here, Ms. Houck filed the Second Bankruptcy a mere 96 days after her First Bankruptcy Case was dismissed. (JA 16, 18.) It is also noteworthy that she filed two Chapter 13 "reorganization" petitions on the eve of the foreclosure sale without having any income of her own to support plan payments. (Id.) Ms. Houck's conduct is exactly the type of conduct discussed by the Arena court that precludes her from claiming status as a debtor; therefore, STS cannot be liable for the alleged violation of the automatic stay. Accordingly, the Trial Court's dismissal of the Complaint should be affirmed.

The Trial Court also correctly applied the Twombly analysis in dismissing the remainder of the Appellants' claims as shall be discussed *Infra, § IV.*

17

## II.  THE TRIAL COURT DID NOT APPLY AN IMPERMISSIBLE BALANCING TEST BECAUSE THE COMPLAINT IS NOT PLAUSIBLE ON ITS FACE.

The Trial Court did not apply an impermissible "balancing test" to the Twombly analysis because the Complaint is simply not plausible on its face.  A plaintiff's Complaint becomes plausible "[w]hen the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Aschroft v. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949.  This standard requires a plaintiff to provide more than "an unadorned the-defendant-unlawfully-harmed-me accusation"; a complaint that offers nothing more that "conclusions" and "naked assertion[s] devoid of 'further factual enhancement' will not survive a motion to dismiss.  Id. (citing Twombly, 550 U.S. at 556–57, 127 S.Ct. at 1955.)  The plausibility standard, however, is "not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. Where a plaintiff merely alleges facts suggested a defendant is liable, "it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id.

Here, the Trial Court did not impose a "balancing test" on Ms. Houck's Complaint as is errantly suggested.  Instead, after accepting all of the Appellants well-pled allegations as true, the Trial Court correctly determined that the Complaint's naked

assertions place it squarely in the realm of speculative possibility and that the Complaint did not give rise to a plausible entitlement to relief.  Appellants question the Trial Court's refusal to adopt the Appellants' paradigm that – to paraphrase – creditors generally act with malicious intentions, rampantly violate the automatic stay and that certain co-Defendants are unethical, (see doc. 15, p. 22.) should warrant reversal of the Trial Court's dismissal.  Appellants' own arguments demonstrate the speculative nature of their Complaint which the Trial Court correctly dismissed as implausible.

Appellants also errantly suggest that somehow it is the responsibility of either STS or the Trial Court to provide an "alternative" explanation as to what happened.  Appellants make this argument with no legal authority because there is none. The Trial Court correctly applied the prevailing standard and found that Appellants' Complaint was simply not plausible. Aschroft v. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556–57, 127 S.Ct. at 1955.)  Accordingly, the Trial Court's dismissal of the Complaint with prejudice should be affirmed.

**III. THE TRIAL COURT DID NOT MAKE ERRORS IN ITS FINDINGS OF FACT BECAUSE APPELLANTS' PROVISION OF NOTICE TO CO-DEFENDANDTS SHOULD NOT IMPUTE NOTICE TO STS.**

The Trial Court did not err in its findings of fact because

19

Ms. Houck wantonly failed to provide notice of the Second
Bankruptcy Case to STS and notice to co-Defendant LifeStore
should not impute notice to STS.  The Trial Court correctly
found that Ms. Houck failed to file a creditor matrix "necessary
to properly serve her creditors,"  (JA 120), a pattern of
conduct that harkened back to Ms. Houck's filing of her First
Bankruptcy Case.  *Supra*.  Ms. Houck specifically admits her
failure to include STS or any other interested party, other than
LifeStore, in her creditor matrices in either of her Bankruptcy
Cases.  <u>Id</u>. Appellants again ask the indulgence of the Trial
Court to excuse Ms. Houck's filing defects by speculating that
STS received notice from an electronic noticing system and/or
notice to co-Defendant LifeStore.  Again, the Appellants offer
no factual or legal authority to support their speculation.

**IV.  THE TRIAL COURT CORRECTLY DISMISSED APPELLANTS' STATE LAW
CLAIMS BY RELYING ON INDEPENDENT AUTHORITY AND RATIONALE.**

The Trial Court correctly dismissed the Appellants'
remaining state law claims because it relied on independent
authority and rationale in holding the Complaint was not
plausible on its face.  As discussed above, the Trial Court
correctly applied the <u>Twombly</u> analysis by concluding that the
Appellants' Complaint failed to state a claim for a violation of
the automatic stay or for any of its state law claims.  *Supra §
I*.  The Trial Court did not, however, base its dismissal of

these claims upon dismissal of the claim for violation of the automatic stay.  Instead, the Trial Court dismissed the state law claims upon recognition of their implausibility and adoption of independent authority supporting STS's motion to dismiss. (JA 119–124.)  Each of these claims will be addressed in turn.

Appellants fail to plead a plausible cause of action for unfair and deceptive trade practices and/or unfair debt collection in violation of the North Carolina Debt Collection Act ("NC–DCA"), N.C. Gen. Stat. § 75–50 *et seq.*, because they fail to plead that STS committed an unfair or deceptive act *at all*, let alone one outside its role conducting the foreclosure sale.  See Davis Lake Comm. Ass'n, Inc. v. Feldman, 138 N.C. App. 292, 530 S.E.2d 865 (2000) (holding that a claim for unfair and deceptive trade practices requires unfair or deceptive act); see also DIRECTV, Inc. v. Cephas, 294 F. Supp 2d. 760, 765 (M.D.N.C. 2003) (holding that "if the abusive conduct alleged pertains only to debt collection, the NCDCA provides a claimant's exclusive remedy.").  Plaintiffs further fail to plead any facts to suggest STS committed any unfair practices in connection with debt collection as required by N.C. Gen. Stat. § 75–55; therefore, their claims for violations of the NC–DCA must also fail.  The Trial Court therefore correctly dismissed these claims.

Turning next to the breach of contract claim, the Appellants again fail to plead a plausible cause of action as to STS because it gave notice of the foreclosure sale in accordance with applicable law. Appellants base this claim by their allegation that STS was required to notice Mr. Tate of the foreclosure sale when he became trustee of the Second Bankruptcy Estate *two business days* before the sale.  N.C. Gen. Stat. § 45-21.17(4) states that "[t]he notice of sale shall be mailed by first-class mail at least <u>20</u> days prior to the date of sale to each party entitled to notice of the hearing provided by G.S. 45-21.16[5] … and in addition shall also be mailed by first-class mail to any party desiring a copy of the notice of sale who has complied with G.S. 45-21.17A." (*emphasis added*).  When STS provided notice of the sale at least twenty days prior, Mr. Tate did not have an interest.  Appellants' suggestion that STS is liable for breach of contract for failure to provide notice to someone not legally entitled to notice – and who obtained the interest just two days prior to the sale – is both factually impossible and patently implausible.  Appellants fail to allege

---

[5] This class of persons are: "(1) any person to whom the security interest instrument itself directs notice to be sent in case of default, (2) any person obligated to repay the indebtedness against whom the holder thereof intends to assert liability therefor, [and] (3) every record owner of the real estate whose interest is of record in the county where the real property is located at the time the notice of hearing is filed in that county …" N.C. Gen. Stat. § 45-21.16(a).

that "… a material breach occur[ed] – one that goes to the very heart of the agreement, or can be characterized as a substantial failure to perform." <u>Fletcher v. Fletcher</u>, 123 N.C. App. 744, 752, 474 S.E.2d 802, 807–08 (1996), disc. rev. denied, 345 N.C. 640, 483 S.E.2d 706 (1997).  Accordingly, the Trial Court correctly dismissed this claim.

Turning next the fraud claims, Ms. Houck failed to plead the elements of fraud – actual or constructive – and, if the Court concludes she did, she failed to plead them with specificity as required by Fed. R. Civ. P. 9(b).  To establish a claim for fraud, a plaintiff must show: "(1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceieve; (4) which does in fact deceive; and (5) which results in damages to the inured party." <u>Bob Timberlake Collection v. Edwards</u>, 176 N.C. app. 33, 39, 626 S.E.2d 315, 322 (2006).  Each element must be supported by "material facts and circumstances." <u>Smith v. Cent. Soya of Athens</u>, 604 F. 518, 529 (E.D.N.C. 1985) (citing <u>Rosenthal v. Perkins</u>, 42 N.C. App. 449, 452, 257 S.E.2d 63, 65–66 (1979)).  The pleader must allege with particularity "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." <u>See Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir. 1999).

23

Heightened pleading standards apply when the alleged defrauder is a corporation. "It is not sufficient to allege conclusorily that [the] corporation made fraudulent misrepresentations." Gants v. NCNN Nat'l. Bank of North Carolina, 94 N.C. App. 198, 201, 379 S.E.2d 865, 868 (1999); see also Coley v. N.C. Nat'l. Bank, 41 N.C. App. 121, 125–26, 254 S.E.2d 217, 219–20 (1979). The pleader must allege the specific individuals who made the misrepresentation as well as the time and place. Id. The Trial Court correctly dismissed the claims for fraud because Ms. Houck's Complaint contained no allegations to support any style of fraud claim.

Turning next to conspiracy, the cause of action arises for damages when an agreement exists between parties to do an unlawful act or a lawful act in an unlawful way that, as a result of actions done in furtherance and/or pursuant to the agreement, damages plaintiff. Fox v. Wilson, 85 N.C. App. 292, 300–1, 354 S.E.2d 737, 742 (1987). A Plaintiff cannot recover damages when the underlying claims fail. See Piriano Bros., LLC v. Altantic Fin. Group Inc., 211 N.C. App 343, 350, 712 S.E.2d 328, 333–4 (2011). Here, Ms. Houck speculates that STS colluded with its co-defendants to have her fall behind on her mortgage, even though she was unemployed and all STS did was administer the foreclosure sale. (JA 28.) Ms. Houck fails to allege STS made an agreement to do the foreclosure – a lawful act – in an

24

unlawful way.  Accordingly, the Trial Court properly dismissed the claims for conspiracy.

Finally, the Trial Court properly dismissed the claims for intentional and negligent infliction of emotional distress because Ms. Houck suffered no distress.  To plead a claim for intentional infliction, a plaintiff must allege "(1) that defendant engaged in extreme and outrageous conduct, (2) which intended to cause and did cause (3) severe emotional distress." Watson v. Dixon, 130 N.C. App 47, 52, 502 S.E.2d 15, 19 (1998). For negligent infliction, "a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress." Johnson v. Ruark Obstetrics, 327 N.C. 283, 304, 395 S.E. 2d 85, 97 (1990).  Here, Ms. Houck again complains of her inability to secure a loan modification – despite her admitted unemployment – and targets STS for its administration of the foreclosure sale.  She fails to allege any actionable "emotional distress" and instead complains of emotions normally associated with financial difficulty.  For those reasons, the Trial Court did not err in dismissing all of Ms. Houck's state law claims against STS.

25

V.    **THE TRIAL COURT CORRECTLY DISMISSED THE COMPLAINT WITH PREJUDICE.**

Contrary to the Appellants' suggestion that the Trial Court should have dismissed Complaint without prejudice, or allowed for a *third* amendment, the Trial Court correctly dismissed the Complaint with prejudice because it is not plausible on its face and the Appellants are not entitled to the relief sought. Appellants' suggest that a plaintiff should get innumerable chances to reconcile its Complaint with prevailing pleading standards and that a defendant who committed no wrongdoing should be condemned to the expense of responding to uncertain amount of amendments or remain under threat of new litigation.

Ms. Houck suggests that the Trial Court's dismissal was based on "procedural error" by Ms. Houck and her counsel while ignoring the fact that the Trial Court's purpose is to "render judgments in accordance with the substantial rights of the parties." Choice Hotels Intern., Inc. v. Goodwin and Boone, 11 F.3d 469, 472 (1993). Here, the Trial Court evaluated Ms. Houck's Complaint on the merits and determined it failed. Contrary to her complaining – and the fact there was no procedural error – the Trial Court correctly dismissed the Complaint with prejudice because it failed to state a claim upon which relief can be granted. Accordingly, the Trial Court's order dismissing the Complaint should be affirmed.

26

## CONCLUSION

The Trial Court correctly dismissed the Complaint with prejudice because the Appellants fail to state a plausible claim for relief for either a violation of the automatic stay or the related state law claims.  The Trial Court correctly applied prevailing jurisprudence and properly determined the case on the merits.  The Trial Court also should not allow a plaintiff infinite times to amend her complaint to remedy its deficiencies.  For these reasons, STS respectfully prays the Court for an order AFFIRMING the Trial Court's dismissal of the Complaint WITH PREJUDICE.

Respectfully submitted this the 6th day of March, 2014.

HUTCHENS LAW FIRM


*/s/ Jeffrey A. Bunda*
Jeffrey A. Bunda, Esq.
N.C. State Bar No. 34432
6230 Fairview Rd., Suite 315
Charlotte, NC 28210
(v): 704.362.9255 x 2359
(f): 704.362.9301
jeff.bunda@hskplaw.com
COUNSEL FOR APPELLEE SUBSTITUTE TRUSTEE
SERVICES, INC.

27

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. 28.1(e)(2) or 32(a)(7)(B) because

   X     This brief contains 6,164 words, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii); AND

   X     This brief uses a monospaced typeface and contains 667 lines of text, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii).

2. The undersigned relied on the word-count function of the word processing system (Microsoft Word 2010) used to prepare the text of this brief.

   Respectfully submitted this the 6th day of March, 2014.

   HUTCHENS LAW FIRM

   */s/Jeffrey A. Bunda*
   Jeffrey A. Bunda, Esq.
   N.C. State Bar No. 34432
   6230 Fairview Rd., Suite 315
   Charlotte, NC 28210
   (v): 704.362.9255 x 2359
   (f): 704.362.9301
   jeff.bunda@hskplaw.com
   COUNSEL FOR APPELLEE SUBSTITUTE TRUSTEE SERVICES, INC.

28

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing *Brief of Appellee* to be filed electronically with the Clerk of Court using the CM/ECF which will send notification of such filing to the following register CM/ECF user:

M. Shane Perry
COLLUM & PERRY
109 W. Statesville Ave.
Mooresville, NC 28115
704.663.4187
shane@collumperry.com

This the 6th day of March, 2014.


*/s/ Jeffrey A. Bunda*
Jeffrey A. Bunda, Esq.